UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF LOUISIANA

IN RE:  CASE NO. 17-10057

LOVE GRACE HOLDINGS, INC.  CHAPTER 11

*Debtor*  JUDGE DOUGLAS D. DODD

**DEBTOR'S AMENDED MOTION FOR INTERIM AND FINAL ORDERS (1) AUTHORIZING AND APPROVING DEBTOR'S POST-PETITION FINANCING; (2) GRANTING SECURITY INTERESTS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS; AND (3) MODIFYING AUTOMATIC STAY PURSUANT TO 11 U.S.C. §§ 105, 362, 363 AND 364 AND FEDERAL RULES OF BANKRUPTCY PROCEDURE 2002 AND 4001**

**NOW INTO COURT**, comes Love Grace Holdings, Inc.[1], as a debtor and debtor-in-possession (the "Debtor"), through its undersigned counsel, and files this Amended Motion for Interim and Final Orders (1) Authorizing and Approving Debtor's Post-Petition Financing; (2) Granting Security Interests and Providing Superpriority Administrative Expense Status; and (3) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 105, 362, 363 and 364 and Federal Rules of Bankruptcy Procedure 2002 and 4001.

**SUMMARY**

1.

In this Motion, the Debtor requests authority to enter into debtor in possession financing (the "DIP Loan") for purposes of obtaining additional inventory and meeting ongoing operating expenses. The proposed debtor-in-possession financing lender is an insider, Arthur A. Lancaster, Jr. The proposed terms for such financing are set forth in the term sheet ("Term Sheet") attached as Exhibit "A" hereto.

---

[1] Love Grace Holdings, Inc. (d/b/a Apricot Lane and d/b/a Blu Spero Boutique), 9100 Bluebonnet Centre Blvd., Suite 401, Baton Rouge, LA 70809, EIN xx-xxx5375.

## LEGAL STANDARD

2.

Post-petition debtor-in-possession financing is governed by Section 364 of the Bankruptcy Code. Courts may approve post-petition financing on a secured, super-priority administrative basis under Section 364(c) of the Bankruptcy Code, and commonly do so when the financing is necessary for the reorganization of the debtor.

3.

In addition to Section 364, to the extent necessary, this Motion is made under Sections 105, 362, and 363 of the Bankruptcy Code and under Bankruptcy Rules 2002 and 4001.

## FACTUAL BACKGROUND

4.

The Debtor operates 12 women clothing stores located in Louisiana, Mississippi, Missouri, Florida and Alabama. The Debtor does not have access to unencumbered cash and needs liquidity to acquire additional inventory and pay operating expenses such as obligations to employees, post-petition vendors and utilities. The Debtor's estate will suffer immediate and irreparable harm if the Debtor does not obtain immediate access to the proposed debtor-in-possession financing.

5.

Home Bank asserts a lien on the Debtor's equipment and some or all of the Debtor's inventory pursuant to a recorded UCC. Carlos Padial, Jr. ("Padial") has a vendor's lien on the Debtor's inventory located in Louisiana..

6.

Arthur A. Lancaster, Jr. is an insider of the Debtor and he and his wife are the owners of the Debtor. The Debtor's business model is based on sales to 18 to 35 year old women who purchase an

outfit for a night out. To service this demographic, the Debtor needs to have fresh inventory. To meet the need for a fresh inventory, the Debtor purchases inventory on a weekly basis.

7.

Arthur A. Lancaster, Jr. is willing to make the DIP Loan to the Debtor in the amount of $300,000.00, of which $150,000.00 is needed immediately to purchase inventory, pay rents for February and to meet the February payroll. The terms are a five percent (5%) interest rate (interest to be capitalized) during the pendency of the chapter 11 case with the DIP Loan due on the Effective Date of a Plan of Reorganization. The lien requested is a first lien on inventory, cash and receivables and a superpriority lien under the Bankruptcy Code. The equipment on which Home Bank has a lien will not serve as security for the DIP Loan. Home Bank and Padial will subordinate their liens on the Debtor's cash, accounts receivable and inventory in exchange for the Debtor's agreeing to maintain a value at cost of inventory, cash and accounts receivable equal to $430,000.00 plus the amount of the DIP Loan advanced. On filing, the Debtor had $400,000.00 of inventory and $30,000.00 of cash and receivables.

## **NEED FOR DEBTOR-IN-POSSESSION FINANCING**

8.

Pursuant to Section 364(c) of the Bankruptcy Code, the Debtor requests that the Court authorize the secured, administrative superpriority DIP Loan. The Debtor has determined that it is unable to obtain credit in another manner, or on any terms superior to those in the DIP Loan. The Debtor submits that entering into the DIP Loan is necessary to fund its post-petition operating expenses and allow the Debtor to successfully reorganize.

9.

The proceeds of the DIP Loan would be used, in part, to preserve the value of estate assets and limit claims against the estate.

## TERMS OF PROPOSED DIP LOAN

10.

The proposed restructuring is outlined in the Term Sheet, a copy of which is attached as Exhibit "A" to this Motion. The material terms are as follows:

| | |
|---|---|
| DIP Collateral: | Inventory, cash and accounts receivable of the Debtor. |
| Amount of DIP Loan and Use of Proceeds: | Debtor-in-possession loan ("DIP Loan") in the total maximum amount of $300,000.00, for purchase of inventory, payment of operating expenses and other costs. |
| DIP Obligations: | DIP obligations (the "DIP Obligations") to be repaid under the DIP Loan include: all unpaid principal and interest on the DIP Loan, and fees as described below. |
| DIP Loan Interest and Fees: | Interest rate of 5%, with default interest (additional 2%) upon the occurrence of an Event of Default (defined below).<br><br>Borrower agrees to pay all actual and reasonable out-of-pocket fees and expenses incurred by DIP Lender in connection with the DIP Loan on the Effective Date of a Plan of Reorganization.. |
| Closing or Commitment Fees: | None |

| | |
|---|---|
| DIP Loan Termination Date: | The earliest to occur of the following (such date being the "Termination Date"):<br><br>(1) September 1, 2017 (the "Maturity Date");<br>(2) acceleration of the DIP Obligations under the DIP Loan due to the occurrence and continuation of an Event of Default;<br>(3) the "effective date" of any plan of reorganization with respect to the Borrower confirmed by the Bankruptcy Court; or<br>(4) the date of execution by the Borrower of any agreement (including any letter of intent) for the sale to any third party of all or any material portion of the property or assets of the Borrower.<br><br>On the Termination Date, the commitment of the DIP Lender to make the DIP Loan as set forth in the DIP Loan Agreement (the "Commitment") shall be terminated, and the DIP Lender shall have no further obligation to provide financing, pursuant to the DIP Loan or otherwise. |
| DIP Loan Payments: | All unpaid principal and interest on the DIP Loan, as well as all other obligations of every nature of Borrower owed to the DIP Lender under the DIP Loan Agreement (the "DIP Obligations"), shall be due and payable, in full on the Termination Date.<br><br>Borrower may voluntarily prepay the DIP Loan in whole or in part at any time without penalty.<br><br>In any event, the Borrower shall be required to permanently repay the DIP Loan (with a corresponding permanent commitment reduction), with the proceeds of sale of any assets of Borrower during the term of the DIP Loan. |

| | |
|---|---|
| Super-Priority Claim and DIP Lender Lien: | Except as agreed with respect to the Carve Out (as defined below)[2], all obligations and liabilities of the Borrower to the DIP Lender pursuant to the DIP Loan, including all accrued interest, fees, costs and expenses, shall constitute an allowed Super-priority administrative expense claim against the Borrower pursuant to Section 364(c)(1) of the Bankruptcy Code, having priority over all administrative expenses of the kind specified in or arising under any sections of the Bankruptcy Code (including, without limitation, Sections 105, 326, 328, 330, 331, 364(c)(1), 503(b), 506(c), 507, 546(c), 726, 1113 and 1114 thereof). (the "Super-Priority Claim").<br><br>In addition, DIP Lender shall be granted a lien and security interest ("DIP Lender Lien") securing all DIP Obligations on all inventory, accounts receivable and cash (the "DIP Lender Collateral"), subject only to the Carve-Out. The DIP Lender Lien shall be deemed effective and perfected as of the date thereof, and no further notice or act will be required to effect such perfection. Borrower shall take such actions as may be required by DIP Lender to create and perfect such liens and security interests in the Property. |
| Documentation: | The Debtor and DIP Lender may execute definitive documentation including a DIP Loan Agreement ("DIP Loan Agreement"). |
| Conditions Precedent to Closing: | The closing of the DIP Loan, and the initial funding thereunder, shall be subject to conditions precedent customary and appropriate for financings of this type, including but not limited to:<br><br>(1) receipt by the DIP Lender of a duly executed DIP Loan Agreement and any necessary ancillary loan and security documents, in form and substance satisfactory to the DIP Lender and the Borrower; and<br>(2) entry by the Bankruptcy Court an interim and final order ("Final Order") which shall approve the DIP Loan and DIP Loan Agreement, and which shall be in form and substance satisfactory to the DIP Lender, and with such prior notice to the necessary parties as required by Bankruptcy Rule 4001 or otherwise. |
| Events of Default: | "Events of Default":<br>(1) Failure to repay the DIP Loan by the Maturity Date;<br>(2) Dissolution, liquidation, or conversion of the Bankruptcy Case to Chapter 7;<br>(3) Reversal, vacation or stay of the Order granting approval for the DIP Loan; |

---

[2] The Carve Out will be limited to amounts set forth in an agreed to budget which accrued prior to the date of a notice of an Event of Default under the DIP Loan and remain unpaid.

{00356124-3}                                                                 6

(4) Failure by the Debtor to comply with any material provision of the Order granting approval of the DIP Loan;

(5) Entry of an order confirming a plan of reorganization that does not: (i) contain a provision for payment in full of all outstanding DIP Obligations on or before the effective date of such plan; and (ii) provide for the continuation of the DIP Lender Lien until such effective date;

(6) Entry of an order: (i) appointing a trustee under Section 1104; (ii) appointing an examiner with enlarged powers (beyond those set forth in Section 1106(a)(3) and (4) of the Bankruptcy Code) relating to the operation of the business under Section 1106(b) of the Bankruptcy Code; (iv) revoking, reversing, staying for a period in excess of fourteen (14) days, vacating or rescinding any provision of this Order; (v) modifying, supplementing or amending any provision of this Order without the consent of the DIP Lender; (vi) permitting any administrative expense, other debtor-in-possession financing or any claim except Colonial Finance's first secured claim on the Property (now existing or hereafter arising, of any kind or nature whatsoever) to have administrative priority as to the Debtor, which is equal or superior in priority to the Super-Priority Claim of the DIP Lender, except in respect of the Carve-Out; (vii) granting or permitting the grant of a lien on the Property other than liens permitted under the DIP Loan Agreement; and/or (viii) dismissing the Bankruptcy Case which dismissal does not contain a provision for termination of the DIP Lender's Commitment and payment in full in cash of all DIP Obligations upon such dismissal;

(7) Entry of an order granting relief from the automatic stay to the holder or holders of any liens on DIP Lender Collateral to permit foreclosure (or the granting of a deed in lieu of foreclosure or the like) on the Property;

(8) Any material provision of the Order approving the DIP Loan or the DIP Loan Agreement ceases to be valid or binding or enforceable against the Debtor;

(9) The Debtor seeks to, or supports (whether by way of motion or other pleadings filed with the Bankruptcy Court) any other party's motion to: (i) disallow in whole or in part any of the DIP Obligations; or (ii) challenge the validity or enforceability of the DIP Lender Lien or security interests granted or confirmed in the DIP Loan Agreement or in this Order in favor of the DIP Lender;

(10) Entry of an order avoiding or requiring disgorgement by the DIP Lender of any amounts received in respect of the DIP Obligations;

(11) The Debtor executes an agreement (including any letter of

{00356124-3}                                                              7

| | |
|---|---|
| | intent) for the sale to any third party of all or any portion of the Property, or other material assets of the Debtor (the date of such execution being the date of such default); or<br>(12) The Debtor fails to meet the Budget attached as Exhibit "B" allowing for a 10% variance in any one item. |
| <u>Remedies</u>: | Upon an Event of Default, DIP Lender may file a motion to lift the automatic stay to obtain the full and indefeasible repayment of all DIP Obligations. |
| <u>Carve Out</u>: | "<u>Carve Out</u>" means (i) the accrued, unpaid and allowed professional fees and costs of Debtor's counsel and any committee counsel up to the amount of $50,000.00; and (ii) the payment of fees to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under 28 U.S.C. §1930; provided, that no portion of the Carve Out shall be utilized for the payment of professional fees and disbursements incurred in connection with any challenge to the amount, extent, priority, validity, perfection or enforcement of the indebtedness of the Borrower owing to the DIP Lender. |

11.

The Debtor requests that the Court enter an interim order as soon as practicable to allow the Debtor access to financing immediately to allow the Debtor to meet its obligations to vendors, employees, and service providers; and that the Court schedule a final hearing on the matter with notice to creditors.

**WHEREFORE**, for the foregoing reasons, Love Grace Holdings, Inc. respectfully requests that the Court grant its Motion for Interim and Final Orders (1) Authorizing and Approving Debtor's Post-Petition Financing; (2) Granting Security Interests and Providing Superpriority Administrative Expense Status; and (3) Modifying Automatic Stay Pursuant to 11 U.S.C. §§ 105, 362, 363 and 364 and Federal Rules Of Bankruptcy Procedure 2002 and 4001 and enter an interim order.

January 25, 2017

      */s/ Douglas S. Draper*
      Douglas S. Draper, La Bar No. 5073
      Leslie A. Collins, La Bar No. 14891
      Greta M. Brouphy, La Bar No. 26216
      Heller, Draper, Patrick, Horn & Dabney, L.L.C.
      650 Poydras Street, Suite 2500
      New Orleans, LA  70130-6103
      Office: 504 299-3300/Fax: 504 299-3399
      E-mail:  ddraper@hellerdraper.com
      E-mail:  lcollins@hellerdraper.com
      E-mail:  gbrouphy@hellerdraper.com

      *Proposed Attorneys for the Debtor*